1



## CANADIAN INTERNATIONAL INTERNET DISPUTE RESOLUTION CENTRE

## DOMAIN NAME DISPUTE

## ADMINISTRATIVE PANEL

## DECISION

| CIIDRC case number: | 17716-UDRP | Decision date: July 27, 2022 |
|---|---|---|
| Domain Name: | ideacity.com | |
| Panel: | Fabrizio Bedarida | |
| Complainant: | Stephen Tseronakis/ ZoomerMedia Ltd. | |
| Respondent: | Mira Holdings | |

## 1. PROCEDURAL HISTORY

The Canadian International Internet Dispute Resolution Centre ("CIIDRC") has informed the Panel as follows: The Complaint under the Uniform Domain Name Dispute Resolution Policy ("Policy") was filed with the CIIDRC on June 8, 2022 requesting a single-member Panel. The CIIDRC checked the Complaint and determined that it satisfies the formal requirements of the Policy, the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the CIIDRC Supplemental Rules. On June 10, 2022, the CIIDRC transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name, and on June 10, 2022, the Registrar responded, advising of the identity of the Respondent. The Registrar also provided the identity and contact details of the Respondent to the CIIDRC.

On June 10, 2022, the CIIDRC, as Service Provider, confirmed the compliance of the Complaint and the commencement of the dispute resolution process. Pursuant to UDRP Rule 4 and Supplemental Rule 5, the CIIDRC notified the Respondent of this administrative proceeding and forwarded a Notice with login information and a link to the Complaint to the Respondent on June 20, 2022. The Respondent filed its response on July 4,

2

2022. On July 15, 2022 the CIIDRC appointed Mr. Fabrizio Bedarida as a single-member Panel and so notified the Parties to this proceeding. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7. The Center set July 19, 2022, as the due date to receive the decision from the Panel.

The Domain Name was registered on November 11, 2019.

This matter is conducted pursuant to the Uniform Domain Name Dispute Resolution Policy (the Policy) and the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules) of the Internet Corporation for Assigned Names and Numbers (ICANN).

## 2. FACTS ALLEGED BY THE PARTIES

The Domain Name was initially registered on November 11, 2019. However, according to the Respondent, it was purchased from the public domain auction website "NameJet.com" for $2,556 on December 14, 2019.

The Canadian IDEACITY trademark was filed on December 8, 2000 and registered on October 8, 2002.

According to the documentation filed by the Complainant, the Domain Name (at the time the Complaint was filed) was used to redirect site visitors to https://stripchat.com/, i.e. a website that hosts pornographic material.

However, according to the Respondent the Domain Name was used to redirect users to different websites depending on the user's cookies and past browser history. The Respondent asserted that on July 4, 2022 the Domain Name pointed to the website www.prizeshub.com with an offer of a free iPhone 13, if the user fills out a survey.

At the time of this decision, the Domain Name resolves to a page displaying a message advertising that the Domain Name might be for sale.

## 3. CONTENTIONS OF THE PARTIES

### Complainant

I. The domain name is identical with or confusingly similar to a trademark or service mark in which the Complainant has rights.

The Complainant contends that the domain name is identical to the IDEACITY trademark.

**Domain Name: ideacity.com**
17716-UDRP

3

II. The Respondent has no rights or legitimate interests in respect of the domain name.

In support of this claim, the Complainant claims that: a) the Respondent is using the Domain Name to redirect users to https://stripchat.com/, where the services offered on the site are not at all related to those offered by the Complainant; b) the redirect is being used to capture traffic based on users mistakenly typing ideacity.com instead of ideacity.ca; c) the Respondent is not offering any goods or services; and d) the Complainant could not find any evidence of content relating to a legitimate business providing goods or services.

III. The domain name has been registered and is being used in bad faith.

The Complainant asserts that the Respondent has intentionally attempted to attract Internet users to the Respondent's web site by exploiting a likelihood of confusion with the Complainant's trademark.

### Respondent

The Respondent claims to be a professional domain name investor (i.e. a Domainer) with more than 1,000 generic domain names under ownership and offered for sale; that the Domain Name is a valuable 2-word generic domain with an estimated value of more than $5,000; that it owns numerous domains with the words "idea" and "city" included, and that it purchased the Domain Name because of the generic value of the terms. The Respondent further asserts that if the Complainant had desired to acquire the domain "IdeaCity.com" they could have bid on the Domain Name in the NameJet.com auction, or demanded that NameJet.com stop the auction and award the Complainant the Domain Name. The Respondent affirms that it may also use the Domain Name for a domain name sales marketplace in the future.

In support of its claims, the Respondent affirms that several previous panels' decisions have held that domain investment is a bona fide offering of goods and services so long as the Complainant's trademark is not used or targeted.

See Dr. Muscle v. Michael Krell, FA1903001833036, (April 19, 2019) – "Domain name speculation alone is not bad faith. Rather, to constitute bad faith, the speculation must be targeted to the trademark value of a name…". See also Oath, Inc. v. Mira Hold/Mira Holdings, Inc., FA1908001858330, (October 8, 2019) wherein facts similar to this case resulted in the Respondent prevailing and keeping the domain name YMOBILE.COM. See also Front Range Internet v. Murphy, FA145231 (April 4, 2003); Alphalogix, Inc. v. DNS Servs., FA491557, (July 26, 2005).

The Panel notes that the Respondent has stated that it has already been involved in a UDRP action in the past and that it has prevailed in holding the domain name <ymobile.com> in its name (Oath, Inc. v. Mira Hold/Mira Holdings, Inc., FA1908001858330 October 8, 2019). The Respondent has not reported any UDRP proceeding that it has lost.

**Domain Name: ideacity.com**
17716-UDRP

The Respondent further asserts that it is located in the U.S. and that it had no knowledge of the Complainant before this case, that it has not used the Domain Name for the areas of the Complainant's interests, and therefore has not targeted or interfered with the Complainant's business.

The Respondent further asserts that it is not targeting the Complainant to sell them the "IdeaCity.com" domain name, and that it has never offered the domain name for sale directly to the Complainant.

In addition, the Respondent submits that owing to the fact that it has zero earnings from domain name parking, the Complainant's attempts to show bad faith on the part of the Respondent, by claiming that the Respondent is profiting by redirecting the domain name to website links and earning on a Pay-per-Click basis, falls flat.

The Respondent also asserts that the Domain Name is being used to redirect users to ads that change accordingly to the user's cookies and past browser history, so that if adult/pornographic content was actually shown at some point then this may have been due to the browsing of adult/pornographic content on the Complainant's computer.

Finally, the Respondent affirms that as of July 4th, to prevent further problems the Domain Name has been changed from zero-click ads to a domain name sales inquiry landing page parked at bodis.com.

**Remedy Sought**

The Complainant asks for the Domain Name to be transferred from the Respondent to the Complainant.

## 4.    DISCUSSION AND FINDINGS

### 4.1    Requirements

In accordance with Paragraph 4 of the Policy, the onus is on the Complainant to prove:

1. That the Domain Name is Identical or Confusingly Similar to a trademark or service mark in which the Complainant has rights:
2. That the Registrant has no rights or legitimate interests in the Domain Name; and
3. That the Domain Name has been registered and being used in bad faith.

The Panel will consider each of these requirements in turn.

### 4.2  Analysis

### 4.2.1 That the Domain Name is Identical or Confusingly Similar to a Mark in which the Complainant has Rights

Domain Name: ideacity.com
17716-UDRP

5

The Complainant has established rights in the IDEACITY trademark by documenting that it is the owner of the Canadian IDEACITY (word) trademark, registration no. 1085486 filed on December 8, 2000 and registered on October 8, 2002.

The Complainant as it appears from the Respondent's response, is also the owner of a U.S. trademark. Namely, the U.S. IDEACITY (word) trademark, registration no. 2766144 filed on April 26, 2001 and registered on September 23, 2003.

The disputed Domain Name is identical to the Complainant's IDEACITY trademark save for the addition of the ".com" generic Top-Level Domain ("gTLD").

Considering that gTLDs are generally disregarded under the test for confusing similarity for the purposes of the Policy, the Domain Name appears to be identical to the Complainant's trademark.

Accordingly, the Panel finds that the Complainant has satisfied paragraph 4(a)(i) of the Policy.

### 4.2.2 That the Respondent has No Rights or Legitimate Interest in the Domain Name

This Panel finds that the Complainant has made a prima facie case that the Respondent does not have rights or legitimate interests in the Domain Name. It appears that the Complainant has not licensed or otherwise authorized the Respondent to use or register any domain name incorporating the Complainant's trademark. The Respondent does not appear to be commonly known by the name "IDEACITY" or by a similar name. The Respondent does not appear to make any legitimate non-commercial or fair use of the Domain Name, nor any use in connection with a bona fide offering of goods or services.

Previous panels have recognized that merely registering a domain name comprised of a dictionary word or phrase does not by itself automatically confer rights or legitimate interests on the respondent; panels have held that mere arguments that a domain name corresponds to a dictionary term/phrase will not necessarily suffice. In order to find rights or legitimate interests in a domain name based on its dictionary meaning, the domain name should be genuinely used, or at least demonstrably intended for such use, in connection with the relied-upon dictionary meaning and not to trade off third-party trademark rights (WIPO Jurisprudential Overview 3.0 sec. 2.10).

In the present case, it appears that the Domain Name was previously used to redirect users to different websites containing ads that (according to the Respondent) change depending to the user's cookies and past browser history, and that (as shown by the Complainant) was also used to redirect to a website containing explicit adult/pornographic content. Currently the Domain Name resolves to a page displaying a message advertising that the Domain Name might be for sale.

This Panel finds therefore that the above use of the Domain Name does not show, still less confers on the Respondent, any rights to and/or legitimate interests in the Domain Name.

**Domain Name: ideacity.com**
17716-UDRP

Accordingly, the Panel finds that the Complainant has satisfied paragraph 4(a)(ii) of the Policy.

### 4.2.3. That the Respondent has Registered and Used the Domain Name in Bad Faith

The Panel, on the basis of the evidence presented, accepts and agrees with the Complainant's contentions that the disputed domain name was registered in bad faith and has been used in bad faith.

The Respondent acquired the Domain Name some nineteen years after the Complainant filed its trademark application and started its use of the IDEACITY trademark.

The Respondent has affirmed that it is a Domainer with 1,000 generic domain names under its ownership and offered for sale, and has claimed that domain name investment is a bona fide offering of goods and services so long as the Complainant's trademark is not used or targeted. The Respondent has also claimed that the Domain Name is constituted of two generic terms, "idea" and "city".

The Panel agrees with the Respondent's second assertion that the Domain Name is constituted of two generic terms, "idea" and "city", but notes that, whereas the terms by themselves are generic terms, their combination does not represent a generic term, but on the contrary they constitute a new term that in the present case perfectly corresponds to the Complainant's registered trademark.

In addition, as previously discussed, in order to find rights or legitimate interests in a domain name based on its dictionary meaning, the domain name should be genuinely used, or at least demonstrably intended for such use, in connection with the relied-upon dictionary meaning. Here it appears that there is no such use.

As regards the Respondent's first assertion, "that domain investment is a bona fide offering of goods and services so long as the Complainant's trademark is not used or targeted", the Panel observes that in this case the disputed domain name perfectly corresponds to a trademark that was already registered and had been in use for almost 20 years, and that the Respondent is a Domainer, therefore an expert in the field of domain name registrations.

In accordance with previous panels' decisions, this Panel believes that the Respondent, being a Domainer, and thus undertaking bulk purchases or automated registrations, has an affirmative obligation to avoid the registration of trademark-abusive domain names.

The Respondent in the present case has not provided any evidence that it has undertaken any additional measures to avoid the abusive use of any registered domain names, nor that it has performed any search to verify whether the Domain Name corresponded or not to a third party's trademark.

7

The Panel's view is therefore that the Respondent's behaviour falls under the concept of wilful blindness, and that the Respondent knew or should have known of the registered trademark of the Complainant when registering the Domain Name.

In addition the Panel notes that the Respondent has said that it has already been involved in a UDRP action in the past and that it has prevailed in holding the domain name <ymobile.com> in its name (Oath, Inc. v. Mira Hold/Mira Holdings, Inc., FA1908001858330 October 8, 2019). However, Respondent has not reported any UDRP proceeding that it has lost.

The Panel, in accordance with its powers (see paragraph 4.10 of the WIPO Overview 3.0 on the topic of independent research by UDRP panels) has conducted an independent search and **has found** that the Respondent has been involved in several UDRP proceedings, and that it was the losing party in at least the following proceedings: FPPM INTERNATIONAL / FLORENT POIRIER V. Above Privacy/Mira Holdings, Inc. (domain paulmarius.com) ADREU case 103801, and The Regents of the University of California V. Domain Admin / Mira Holdings Inc.(domain ucfs.com) NAF case 1763642 (January 23, 2018).

The fact that before registering the Domain Name the Respondent had already been involved in several proceedings, and more pertinently, the fact that it was also the losing party in two of them, reinforces the Panel's view that as a Domainer and an expert in this field the Respondent has an affirmative obligation to avoid the registration of trademark-abusive domain names.

In addition, from the proceedings in which it has been involved, it emerges that the Respondent has also registered domain names that are not merely composed of generic terms (e.g. ucfs.com and paulmarius.com).

Noting registrant obligations under UDRP paragraph 2, panels have however found that respondents who (deliberately) fail to search and/or screen registrations against available online databases would be responsible for any resulting abusive registrations under the concept of willful blindness; depending on the facts and circumstances of a case, this concept has been applied irrespective of whether the registrant is a professional domainer. (WIPO Jurisprudential Overview 3.0 sec. 3.2.2.). In this sense see also Research In Motion Limited v. Privacy Locked LLC/Nat Collicot Wipo Case No. D2009-0320: "This Panel has never favoured constructive knowledge leading to findings of bad faith, but now concedes that these new practices of automated bulk transfers of domain names do necessitate a limited form of constructive knowledge if the Policy is not to fall into disrepute. The Panel believes it appropriate that purchasers of domain names should be taken to have knowledge of (a) what they have purchased and (b) how their domain names are being used. Accordingly, if a domain name, which they have purchased incorporates a third party's trade mark of which they are likely to have knowledge, they should be treated as having acquired that domain name knowingly and knowingly to have put the domain name to the use to which it is being put. Were it otherwise, automated bulk transfers of domain names would be the perfect shield for abusive registrations".

Domain Name: ideacity.com
17716-UDRP